UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PAUL BARTONE,

                Plaintiff,                  **MEMORANDUM OF**
                                                  **DECISION & ORDER**
         -against-                      17-cv-03039 (ADS) (GRB)

JOSEPH PODBELA,

                Defendant.
------------------------------------------------------------X

**APPEARANCES:**

**Law Office of Amy Jane Agnew P.C.**
*Attorney for the Plaintiff*
43 West 43rd Street, Suite 79
New York, NY 10036
        By:    Amy Jane Agnew, Esq., Of Counsel

**Certilman Balin Adler & Hyman, LLP**
*Attorneys for the Defendant*
90 Merrick Avenue
9th Floor
East Meadow, NY 11554
        By:    Sandra M. Pendrick, Esq., of Counsel

**SPATT, District Judge**:

        The Plaintiff Paul Bartone (the "Plaintiff") commenced this action against the Defendant Joseph Podbela (the "Defendant"), seeking, *inter alia*, an accounting of the assets held by the Defendant as a result of the death of the Plaintiff's brother, Ralph Bartone (the "Decedent").

        Presently before the Court is a motion by the Defendant to dismiss the complaint pursuant to Federal Rule Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(1), or in the alternative, 12(b)(6).

For the following reasons, the Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(1) is granted because the Plaintiff does not have standing.

## I. BACKGROUND

### A. The Relevant Facts

The Plaintiff and the Decedent were brothers. The Plaintiff currently lives in Minnesota. Before moving to Minnesota in 2008, he lived near the Decedent and saw him often. After moving to Minnesota, he spoke with the Decedent several times a week on the phone and visited him as often as possible.

The Defendant is the Plaintiff's nephew, and was also one of the Decedent's nephews.

The Decedent died in 2016. The Decedent lived his entire adult life in the greater New York City metropolitan area. The Decedent had a close relationship with both the Plaintiff and the Defendant. The Plaintiff claims that the Decedent suffered from mental health problems his entire life; only had an eighth grade education; and could not handle "normal" responsibilities or make decisions for himself during the last ten years of his life. The Plaintiff states that he is only aware of one substantial asset owned by the Decedent, a savings account with a value of approximately $800,000. This savings account is apparently a joint account, which was held by the Decedent and the Defendant.

After the Plaintiff moved to Minnesota, the Decedent relied heavily on the Defendant. The Defendant drove the Decedent; arranged for in-home nursing care; and helped the Decedent manage his estate.

In 2007, the Decedent hired Larry Biblo ("Biblo") to draft a will. The Plaintiff alleges that Biblo had a pre-existing personal and professional relationship with the Defendant.

2

Biblo memorialized the testamentary intentions and plans of the Decedent in a letter dated May 4, 2007. The letter, which was sent to the Decedent, stated that his estate would be divided among eight nieces and nephews, and that the Defendant and the Plaintiff would serve as dual agents under a springing power of attorney. The Defendant was sent a copy of the May 4, 2007 letter. The Plaintiff claims that the letter also suggests that the Decedent add the Defendant as a co-owner on his bank account. The letter advised the Decedent that he could change the allocation of his assets upon his death without amending his will by naming beneficiaries on certain accounts.

The Decedent's copy of the May 4, 2007 letter purportedly includes handwritten notes from the Decedent stating his intention to include his five siblings as beneficiaries of his estate. Similarly, the cover page of a draft of the 2007 Will also contains the Decedent's handwritten expression of his desire to include his eight nieces and nephews and his five siblings as beneficiaries. The second page of the draft also allegedly contains notes of a similar desire to include his siblings as beneficiaries.

The Plaintiff believed that he had a springing power of attorney over the Decedent. Although the Decedent never used that term, he apparently told the Plaintiff that he would have the authority to make decisions about the Decedent in tandem with the Defendant.

On June 6, 2007, the Decedent executed the 2007 Will, which does not include his siblings as beneficiaries. The 2007 Will gives exclusive springing power of attorney to the Defendant, and names him as the executor. It names the Plaintiff as the alternative executor. The Defendant was allegedly present for the execution of the 2007 Will.

The Plaintiff claims that the 2007 Will did not include the Decedent's siblings as beneficiaries because of the undue influence of the Defendant.

In 2012, the Decedent sought to amend his Will to add his two surviving siblings as beneficiaries, and add the Plaintiff as a co-executor. On March 19, 2012, Biblo sent the Decedent a draft of the proposed 2012 Will, and sent a copy to the Defendant. The letter to the Decedent, which was enclosed with the draft, states, "[y]ou mentioned that a large savings account that you have may be held jointly with another individual. Please keep in mind that any asset that you have that is held jointly, or which names a beneficiary[,] will go directly to that individual and will not pass through your Will." (Compl. ¶ 71).

While the Plaintiff does not know if the 2012 Will was ever executed, Biblo sent the draft of the 2012 Will to the Plaintiff when the Plaintiff inquired about the Decedent's estate planning. The Plaintiff believed that the 2012 Will had been executed. The draft of the 2012 Will, supplied by the Defendant, lists the Plaintiff as a beneficiary of the estate.

The Plaintiff alleges that the Defendant's undue influence on the Decedent caused the Decedent to list the Defendant as the sole beneficiary of his largest asset, his bank account.

On June 19, 2016 the Decedent died.

On July 26, 2016, Biblo & Freier LLP filed the 2007 Will of the Decedent in Surrogate's Court in Nassau County, New York. On August 25, 2016, Biblo & Freier sent a waiver of process and consent to probate to the Plaintiff along with a copy of the 2007 Will. The Plaintiff informed Biblo & Freier that he would be requesting pre-objection examinations and an accounting in Surrogate's Court. The probate of the Decedent's estate was not initiated at that time.

On December 1, 2016, the Plaintiff received a letter from the Surrogate's Court informing him that the Defendant, as a voluntary administrator, filed a small estate for the Decedent valued at $30,000.

The Plaintiff alleges that family members have informed him that the Defendant has distributed money from the Decedent's assets to some of the Decedent's intended beneficiaries. The Plaintiff alleges that these payments are being made from the funds in the joint savings account. Purportedly, one intended beneficiary told the Plaintiff that he received $28,000, which was what "everybody else got." (*Id.* ¶ 97). The Defendant apparently told the intended beneficiary that he would receive the rest after the instant litigation was resolved.

On December 7, 2016, counsel for the Defendant called the Plaintiff and told him that "there is no estate and no probate of an estate." (*Id.* ¶ 103). Counsel for the Defendant sent a letter to the Plaintiff stating that the Decedent "named [the Defendant] as a joint holder of his account(s) because he wanted the account(s) to pass directly to [the Defendant] upon his death." (*Id.* ¶ 104).

The Plaintiff alleges that the Decedent did not understand the consequences of making the Defendant the sole beneficiary of his bank account.

On June 30, 2017, the Defendant filed a petition for probate for the Will of Ralph Bartone in the Nassau County Probate Court. In his petition, he noted that the approximate total value of all property constituting the Decedent's gross testamentary estate was greater than $0 but less than $10,000.

**B. The Relevant Procedural History**

On May 19, 2017, the Plaintiff filed his complaint. The Plaintiff seeks an accounting of any and all monies obtained by the Defendant which was the rightful property of the heirs of the Decedent, as well as a constructive trust on the *res* of the Decedent's property from the time it entered the Defendant's possession. He also brings claims for unjust enrichment, and undue influence.

The Defendant filed his instant motion to dismiss on July 25, 2017.

5

## II.  DISCUSSION

### A.  As to the Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1.  The Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(1), a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010).

"The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005).

In deciding a Rule 12 motion to dismiss, the Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Morrison,* 547 F.3d at 170 (quoting *Natural Res. Def. Council v. Johnson,* 461 F.3d 164, 171 (2d Cir. 2006) (citation and internal quotation marks omitted)), but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," *id.* (quoting *APWU v. Potter,* 343 F.3d 619, 623 (2d Cir. 2003)).  In deciding the motion, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir. 2004); *see also Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

## 2. The Defendant's Arguments

The Defendant contends that the Court should dismiss the complaint for lack of subject matter jurisdiction because 1) the probate exception to federal jurisdiction applies; and 2) the Plaintiff does not have standing to bring his claims. The Plaintiff opposes both of these assertions. The two arguments are deeply intertwined, and Court will address each of the Defendant's arguments in turn. First, the Court will consider whether the claims brought and the remedies sought by the Plaintiff implicate the probate exception. Second, the Court will consider whether, in light of the probate exception, the Plaintiff has standing.

## 3. As to Whether the Probate Exception Applies

### a. The Relevant Law

The probate exception is a judicially created doctrine, which is not "compelled by the text of the Constitution or federal statute." *Marshall v. Marshall*, 547 U.S. 293, 299, 126 S. Ct. 1735, 1741, 164 L. Ed. 2d 480 (2006). The exception holds that federal courts sitting in diversity are divested from hearing "probate matters." *Lefkowitz v. Bank of New York*, 528 F.3d 102, 105 (2d Cir. 2007). Prior to the Supreme Court's decision in *Marshall*, the probate exception was applied broadly to exclude all matters that would interfere with a probate matter. *See, e.g., Markham v. Allen*, 326 U.S. 490, 494, 66 S. Ct. 296, 298, 90 L. Ed. 256 (1946) ("[I]t has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." (internal citations and quotation marks omitted)).

In *Marshall*, the Court clarified the standard, and held that:

> the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall*, 547 U.S. at 311–12; *see also King v. Shou-Kung Wang*, 663 F. App'x 12, 13 (2d Cir. 2016) ("Post–*Marshall*, the probate exception is to be construed narrowly, such that unless a federal court is endeavoring to (1) probate or annul a will, (2) administer (or invalidate the administration of) an estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court, the probate exception does not apply." (citing *Lefkowitz*, 528 F.3d at 105–06).

### b. Application to the Plaintiff's Claims

The Court finds that the specific claims and remedies sought by the Plaintiff in this action do not fall within the probate exception, and the Court can therefore exercise jurisdiction over the types of claims and remedies brought by the Plaintiff.

Turning to the first prong under *Marshall*, the Court finds that nothing in the Plaintiff's claims actually asks the Court to "probate or annul a will" or "administ[er] [] [the] decedent's estate." 547 U.S. at 311. "[B]ecause 'few practitioners would be so misdirected as to seek letters testamentary or letters of administration from a federal judge, the first prong of the probate exception is rarely, if ever, violated.'" *Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 532–33 (S.D.N.Y. 2010) (quoting *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002) (internal alterations omitted)).

Indeed, the Plaintiff does not seek letters testamentary or letters of administration here. Instead, he seeks an accounting and the formation of a constructive trust, and brings two claims sounding in tort. Nor does the Plaintiff seek an annulment of the 2007 Will. While the Plaintiff's

fourth cause of action could be read broadly to seek annulment of the 2007 Will in light of the Defendant's undue influence, the Court instead reads the cause of action for undue influence narrowly to relate solely to the joint bank account. This is because, pursuant to the probate exception, the Court would be unable to annul the 2007 Will, or declare the 2012 Will valid. Furthermore, it is clear from the complaint as a whole that the Plaintiff's claims focus on the Decedent's largest asset at the time of his death, the joint savings account. Indeed, the fourth cause of action states that the "Defendant came into ownership of the corpus of [the] Decedent's savings account by exerting undue influence over [the] Decedent to make [the] Defendant the sole beneficiary." (Compl. ¶ 135). Finally, the Plaintiff's requested relief does not seek an annulment of the 2007 Will. (*See* Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss at 15 ("The validity of the 2007 [Will] is rightfully left to the probate court . . . .")). Therefore, the first prong of *Marshall* does not apply here.

As to the second *Marshall* prong, the Court finds that it would not have to assume *in rem* jurisdiction over any property in the custody of the probate court. The Plaintiff's claims relate solely to the joint savings account, and the account is not currently in the custody of the probate court.

At the time of his death, the Decedent held a joint savings account with the Defendant which had approximately $800,000. According to the voluntary estate filed by the Defendant, the Decedent's sole other asset was a vehicle valued at $5,000. (Def.'s Ex. 8). As stated above, the Plaintiff seeks an accounting of all of the monies received by the Defendant from the Decedent, as well as the imposition of a constructive trust over the Decedent's property. The Plaintiff clarified in his memorandum in opposition that all of his claims relate solely to the joint bank account. (*See* Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss at 17–24).

The Plaintiff alleges that the Defendant has paid monies to the Decedent's intended beneficiaries out of this account. Neither the complaint nor the Defendant's petition for probate and letters testamentary lists the savings account as part of the Decedent's estate.

Pursuant to the New York Banking Law, the joint savings account does not pass to the estate unless someone challenges whether the Decedent intended to create a joint savings account. A person challenging the creation of a joint savings account must show that the account was created under circumstances evincing fraud or undue influence. *See* N.Y. BANKING LAW § 675(a) ("When a deposit of cash . . . has been made . . . with any banking organization . . . in the name of such depositor . . . and another person and in form to be paid or delivered to either, or the survivor of them, such deposit . . . and any additions thereto made, by either of such persons, after the making thereof, shall become the property of such persons as joint tenants and the same, together with all additions and accruals thereon, shall be held for the exclusive use of the persons so named, and may be paid or delivered to either during the lifetime of both or to the survivor after the death of one of them . . . ."); *id.* at § 675(b) ("The making of such deposit . . . shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding to which . . . surviving depositor . . . is a party, of the intention of both depositors . . . to create a joint tenancy and to vest title to such deposit . . . and additions and accruals thereon, in such survivor. The burden of proof in refuting such *prima facie* evidence is upon the party or parties challenging the title of the survivor."); *In re Dubin*, 54 A.D.3d 947, 949, 864 N.Y.S.2d 526, 527 (N.Y. 2008) ("Generally, the deposit of funds into a joint account constitutes prima facie evidence of an intent to create a joint tenancy. Furthermore, survivorship language on bank documents . . . triggers the presumption in Banking Law § 675 that the account is a joint account with right of survivorship." (internal citations omitted)).

Therefore, the funds in the Decedent's joint savings account, which comprise the largest single substantial asset of the Decedent of which the Plaintiff is aware, are not currently part of the estate. Instead, the funds belong to the Defendant. In order to make them part of the estate, the Plaintiff, or someone similarly situated, would first have to bring an action such as this one challenging whether the Decedent ever intended to make it a joint account. *See, e.g., Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 255 (S.D.N.Y. 2006) (holding that the probate exception did not apply where the plaintiff sought to have a constructive trust imposed over a residence allegedly conveyed via invalid deed because, *inter alia*, "unless and until some judicial authority accepts [the plaintiff's] objections to the validity of the Deed, which was recorded on March 11, 1992, the Property is not part of [the decedent's] estate, but in fact belongs to [the defendant]"). As the joint savings account is not part of the estate, the Surrogate's Court cannot yet have exercised jurisdiction over it. The joint savings account currently belongs to the Defendant.

This is a case where the Plaintiff "seeks to recover assets allegedly in [the] [D]efendant's possession so that they may be returned to the estate, [and therefore,] the probate exception does not apply. *Capponi v. Murphy*, 772 F. Supp. 2d 457, 466 (S.D.N.Y. 2009) (citing *Popple v. Crouse,* No. 06 Civ. 1567, 2007 WL 2071627, at *2 (D. Conn. July 13, 2007) (denying the defendant's motion to dismiss claims of unjust enrichment, breach of fiduciary duty, conversion where the defendant was allegedly in possession of estate funds); *Groman v. Cola,* No. 07 Civ. 2635, 2007 WL 3340922, at *5 (S.D.N.Y. Nov. 7, 2007) (distinguishing instances in which the probate exception would not apply because plaintiff seeks "new money to be paid into the Estate," from those in which the probate exception would apply because the plaintiff seeks "existing money to be distributed out of the Estate")); *see also Marcus*, 715 F. Supp. 2d at 534 ("Even assuming, *arguendo,* that the Trust was improperly terminated, Plaintiffs, at best, are asking the Court to

11

return property currently in the Defendants' possession to the Trust. Requests to return property to an estate or trust, rather than to dispose of property currently part of an estate or trust, do not fall within the probate exception because the *res* at issue is not within the probate court's jurisdiction if it is was not part of the estate at the time of the decedent's death." (internal citations omitted)); *Abercrombie*, 438 F. Supp. 2d at 255–56 ("This case does not ask the Court to decide how to distribute any assets of Ms. Murphy's estate, but only to determine whether additional assets, i.e., the Property, should be added to the estate, thus making the probate exception inapplicable.").

In *Fischer v. Graham*, No. 15-CV-6414 (NSR), 2016 WL 3181157 (S.D.N.Y. June 3, 2016), there was a dispute among siblings as to whether a joint account should have been distributed equally among them after their parents passed away. The Court summarized whether the probate exception applied in this way:

> In the present case, Plaintiffs seek the distribution of funds from the Joint Account to which Defendant is an account party. Plaintiffs' claims cannot be interpreted as a purely probate matter, and Plaintiffs are not seeking to probate a will. Therefore, the first prong of the probate exception is inapplicable. Additionally, because Plaintiffs do not seek the distribution of estate funds under the control of a probate court, any relief granted by this Court would not require it to interfere with res in the custody of a state court, rendering the second prong of the probate exception inapplicable.

*Id.* at *2 (S.D.N.Y. June 3, 2016) (internal citations omitted). Similarly here, the Plaintiff does not seek distribution of estate funds, but instead seeks the return of funds he believes belong to the estate. Therefore, the probate exception does not apply.

Furthermore, the Plaintiff's claims for an accounting, unjust enrichment and undue influence do not require this Court to assume *in rem* jurisdiction over any property. The claims for undue influence and unjust enrichment are tort claims that seek damages from the Defendant personally. Such claims clearly do not fall within the probate exception. *See Fisch v. Fisch*, No. 14-CV-1516 NSR, 2014 WL 5088110, at *3 (S.D.N.Y. Sept. 23, 2014) ("The probate exception

applies to claims in which a plaintiff seeks 'in essence, a disgorgement of funds that remain under the control of the Probate Court,' but not to claims in which a plaintiff seeks 'damages from Defendants personally rather than assets or distributions from an estate,' such as claims of breach of fiduciary duty or other tort claims." (quoting *Lefkowitz,* 528 F.3d at 107–08 (internal alterations omitted))). To that end, "Plaintiff['s] request for an 'accounting' does not magically transform [his] basic tort claims into allegations asking the Court to exercise jurisdiction over a *res* under state court jurisdiction." *Marcus*, 715 F. Supp. 2d at 534 (citing *Abercrombie,* 438 F. Supp. 2d at 254)

While the request for an imposition of a constructive trust would require this Court to exercise *in rem* jurisdiction over property, the joint bank account is not part of the estate or under the control of the surrogate's court, and therefore does not fall within the probate exception.

Therefore, the Plaintiff's claims do not fall within the probate exception and this Court is able to exercise jurisdiction over this case. Accordingly, the Defendant's motion to dismiss the complaint on that basis is denied.

### 4. As to Whether the Plaintiff has Standing

#### a. The Relevant Law

Article III, Section 2 of the Constitution limits federal jurisdiction to actual cases and controversies. U.S. CONST. ART. III § 2. It is well-established that:

> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal citations and quotation marks omitted).

Apart from the constitutional requirements, plaintiffs must also meet prudential standing requirements. Pursuant to those requirements, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 185 (2d Cir. 2001) (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975)).

### b. Application to the Plaintiff's Claims

The Defendant contends that the Plaintiff does not have standing because, in order to find for the Plaintiff, the Court would have to find that the Plaintiff is a beneficiary of the Decedent's estate. The Defendant argues that such a finding would violate the probate exception. In opposition, the Plaintiff states that extraordinary circumstances apply and that he should be permitted to bring this suit. The Court finds that the Plaintiff does not have standing because his status as a beneficiary has not yet been determined by the Surrogate's Court.

Here, the alleged injury is that the Decedent's estate was deprived of certain monies because the Defendant exercised undue influence over the Decedent, causing him to list the Defendant as the sole beneficiary of the Decedent's only substantial asset. Therefore, the Plaintiff has alleged an injury to the estate, but not any injury to him. Therefore, the issue is whether the Plaintiff can bring claims on behalf of the Decedent's estate. The Court answers this question in the negative.

Under New York law, absent extraordinary circumstances, actions brought on behalf of an estate must be brought by an executor or administrator. *Thea v. Kleinhandler*, No. 13 CIV. 4895 PKC, 2014 WL 2111637, at *5 (S.D.N.Y. May 13, 2014) (citing *Garmon v. Cnty. of Rockland*, No. 10 Civ. 7724(ALC)(GW), 2013 WL 541380, at *3 (Feb. 11, 2013)). "[E]xtraordinary circumstances may be implicated where the executor is allegedly directly involved in purported egregious conduct and self-dealing that negatively impacts the potential assets of the estate." *Lewis v. DiMaggio*, 115 A.D.3d 1042, 1044, 981 N.Y.S.2d 844, 845 (N.Y. App. Div. 2014) (internal citations omitted).

Under those extraordinary circumstances, actions on behalf of the estate may be brought by beneficiaries or legatees. *See Witzenburg v. Jurgens*, 2007 U.S. Dist. LEXIS 103283, *31 (E.D.N.Y. Mar. 1, 2007) (citing cases standing for the fact that, under extraordinary circumstances, legatees and beneficiaries can sue on behalf of the estate); *Lefkowitz v. Bank of New York*, No. 01 CIV. 6252 VM, 2003 WL 22480049, at *7 (S.D.N.Y. Oct. 31, 2003) ("Cases permitting beneficiaries to bring actions for wrongs done to an estate do commonly involve a beneficiary attempting to recover estate property that the executor allegedly had a role in removing from the estate." (internal citations omitted)), *aff'd in part, rev'd in part and remanded*, 528 F.3d 102 (2d Cir. 2007).

The Plaintiff is neither an administrator nor an executor. The Defendant, as voluntary administrator, is the current fiduciary of the estate. *See* N.Y. SURR. CT. PROC. ACT LAW § 1306 ("[A] voluntary administrator shall be deemed to be the fiduciary of the estate until another fiduciary is appointed, and except as hereinafter provided, the voluntary administrator shall have the rights, powers and duties with respect to personal property of an administrator duly appointed for the estate."). While the Court finds that the Plaintiff has alleged sufficient facts for the Court

to plausibly find extraordinary circumstances here, the Plaintiff's status as a beneficiary has not yet been determined.

The Defendant has petitioned for probate of the 2007 Will. The 2007 Will does not list the Plaintiff as a beneficiary. However, the Defendant listed the Plaintiff as a distributee in his petition for probate. (Def.'s Ex. 11). Nevertheless, the Plaintiff's status as a beneficiary has not yet been determined. In order to find that the Plaintiff is a beneficiary, the Court would have to probate or annul the 2007 Will. That is, the 2007 Will does not name the Plaintiff as a beneficiary of the Decedent's estate. The Plaintiff can only be a beneficiary of the estate if the Court finds that the Decedent died intestate, or that the draft 2012 Will should be probated. This, of course, would violate the probate exception. *See Marshall*, 547 U.S. at 311–12 ("[T]he probate exception reserves to state probate courts the probate or annulment of a will . . . .").

The Plaintiff presented one case which he claims supports his position that he should be permitted to sue on behalf of the estate as an intended beneficiary. However, that case is from the Southern District of Alabama; it applied Alabama law and relied on a case from the Supreme Court of Alabama; found that the Plaintiff could not sue on behalf of the estate; but found that she could sue on her own behalf. *John Hancock Life Ins. Co. (U.S.A.) v. Allen*, No. CIV.A. 13-0613-WS-B, 2014 WL 7336922, at *6 (S.D. Ala. Dec. 22, 2014). Here, as stated above, the Plaintiff cannot bring claims on his own behalf because he has not alleged any injury. As the Court in *Abercrombie* stated:

> [W]hat is at stake in this action is not [the plaintiff's] right to pursue anything, let alone her self-interested desire to continue this lawsuit, but the best interests of [the decedent's] estate. Put bluntly, if [the defendant] committed a wrong here, it was [the decedent], and not [the plaintiff], who was directly harmed. And, therefore, it is [the decedent's] estate, and not [the plaintiff], that has a valid interest in pursuing bona fide litigation to resolve that question.

16

438 F. Supp. 2d at 256–57 (internal citations omitted); *see also Lamica v LaPierre*, No. 5:05 CV 964 JFJS/GJD, 2006 WL 3423861, at *3 (N.D.N.Y. Nov. 28, 2006) ("Plaintiff cannot meet the three standing requirements of Article III. The only damage inflicted by the alleged wrong in this case was a reduction of [the decedent's] estate. The second will[] le[ft] all real property to Plaintiff and all personal property to Defendant . . . . Therefore, the only injury possible under the second will would be a reduction in *Defendant's* share of the estate because she was entitled to receive all of the disputed personal property. Thus, Plaintiff cannot show actual or threatened injury." (emphasis in original)).

In cases where plaintiffs alleged that property or funds properly belonged to an estate, the will had already been probated and/or the estate had already been administered. *Black v. Wrigley*, No. 16-CV-430 (CBA) (ST), 2017 WL 4402444, at *1 (E.D.N.Y. Sept. 30, 2017) (probate court had already determined beneficiaries); *English v. Murphy-Lattanzi*, No. 12-CV-419 JS SIL, 2015 WL 630248, at *1 (E.D.N.Y. Feb. 12, 2015) (""On August 14, 2014, the Massachusetts Probate and Family Court issued a Decree and Order appointing Lattanzi as the personal representative of Defendant's estate."); *Fisch*, 2014 WL 5088110, at *1 ("The 2009 Will was admitted to probate in the Surrogate's Court of the State of New York, Westchester County, and the Surrogate issued Preliminary Letters Testamentary to Defendant on May 28, 2014."); *Mercer v. Mercer*, No. CV 13-5686 SJF WDW, 2014 WL 3654667, at *2 (E.D.N.Y. May 22, 2014) (plaintiffs initiated proceedings as beneficiaries after contested probate proceedings in surrogate's court, and there was a settlement agreement to the contested probate proceeding), *report and recommendation adopted in part sub nom. Mercer v. Bank of New York Mellon, N.A.*, No. 13-CV-5686 SJF WDW, 2014 WL 3655657 (E.D.N.Y. July 21, 2014), *aff'd*, 609 F. App'x 677 (2d Cir. 2015); *Marcus*, 715 F. Supp. 2d at 527 ("Nettie Benenson's will was offered for probate without contest"); *Thomas &*

*Agnes Carvel Found. v. Carvel*, 736 F. Supp. 2d 730, 735–36 (S.D.N.Y. 2010) (probate court appointed a guardian *ad litem* for the defendant as a beneficiary under the will after suspending her status as a trustee of the testamentary trust); *Witzenburg*, 2009 WL 1033395, at *3 ("The Will was admitted to probate by the Suffolk County Surrogate's Court on December 3, 2001."); *Capponi*, 772 F. Supp. 2d at 462 ("Louise died intestate on March 11, 2007 in Clarke County, Virginia. The circuit court in Clarke County granted John letters of administration in connection with Louise's estate on May 16, 2007."); *Groman*, 2007 WL 3340922, at *1 ("On October 23, 2003, the New York County Surrogate's Court admitted his Last Will and Testament to probate and issued Letters Testamentary to Plaintiffs Groman and Hensin."); *Abercrombie*, 438 F. Supp. 2d at 249 (although there was a probate proceeding to determine the validity of a previously unknown will, the plaintiff, proceeding on behalf of the estate, had been appointed administratrix of the estate by the surrogate's court); *Lamica*, 2006 WL 3423861, at *1 ("Following John Lamica's death, Defendant was appointed executrix of his estate and was granted Limited Letters of Testament in Virginia and Ancillary Letters Testamentary in Oswego County. The second will was admitted to probate in Virginia on July 21, 2004."); *Lefkowitz*, 2003 WL 22480049, at *1 (stating that there had been multiple proceedings regarding the administration of the estates in the state courts).

Here, the Decedent's 2007 Will has not yet been probated. In fact, the Defendant has petitioned for the 2007 Will to be probated, and that action is currently pending in the Surrogate's Court.

Therefore, the Court finds that the Plaintiff does not have standing at this time to bring claims on behalf of the estate of the Decedent. *See Yien-Koo King v. Wang*, No. 14 CIV. 7694 (JFK), 2017 WL 2656451, at *5 (S.D.N.Y. June 20, 2017) (holding that the plaintiff did not have

standing to bring claims on behalf of the estate because the wills remained in contest and his status as a beneficiary of the estate had not yet been determined), *appeal dismissed sub nom. King v. Wang*, No. 17-2220, 2017 WL 6945552 (2d Cir. Oct. 24, 2017).  In the event that the Surrogate's Court finds that he is a beneficiary of the estate, the Plaintiff may refile his claims.  Similarly, if the Surrogate's Court appoints the Plaintiff as administrator or executor of the Decedent's estate; or grants him limited letters of administration pursuant to N.Y. SURR. CT. PROC. ACT § 709(2) to prosecute claims on behalf of the estate, he can bring claims on behalf of the estate.

Accordingly, the Defendant's motion to dismiss the Plaintiff's complaint pursuant to Rule 12(b)(1) for lack of standing is granted.

### III.  CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(1) is granted because the Plaintiff does not have standing to pursue his claims.  The Plaintiff's claims are dismissed without prejudice, and the Plaintiff is granted leave to refile in the event that the Surrogate's Court 1) finds that the Plaintiff is a beneficiary of the Decedent's estate, or 2) names him executor or administrator of the estate, or 3) grants him limited letters of administration for purposes of prosecuting the claims on behalf of the estate.  If either of those conditions is satisfied, the Plaintiff must bring this claim on behalf of the estate of the Decedent.

The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED:**

Dated: Central Islip, New York

February 23, 2018

                                                                         */s/ Arthur D. Spatt*

                                                                         ARTHUR D. SPATT

                                                                         United States District Judge